```
 1                    UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4  UNITED STATES OF AMERICA,        )
                                     )
 5       Plaintiff,                  ) No. 18-CR-3739-WQH
                                     )
 6          v.                       ) December 27, 2019
                                     )
 7  MANUEL AGUSTIN RODRIGUEZ-SERNA,  ) 1:29 p.m.
                                     )
 8       Defendant.                  ) San Diego, California
    _____)
 9

10
                   TRANSCRIPT OF SENTENCING HEARING
11              BEFORE THE HONORABLE WILLIAM Q. HAYES
                    UNITED STATES DISTRICT JUDGE
12
    APPEARANCES:
13
    For the Plaintiff:       United States Attorney's Office
14                           By:  MEGHAN HEESCH, ESQ.
                             880 Front Street, Room 6293
15                           San Diego, California  92101

16  For the Defendant:       Law Office of Alfred S. Donau III
                             By:  ALFRED S. DONAU, ESQ.
17                           3505 N. Campbell Avenue, Suite 501
                             Tucson, Arizona 85719
18
    Court Interpreter:       Dan DeCoursey
19                           Certified Spanish Interpreter

20

21

22  Court Reporter:          Melinda S. Setterman, RPR, CRR
                             District Court Clerk's Office
23                           333 West Broadway, Suite 420
                             San Diego, California, 92101
24                           melinda_setterman@casd.uscourts.gov

25  Reported by Stenotype, Transcribed by Computer
```

```
01:29    1        SAN DIEGO, CALIFORNIA, DECEMBER 27, 2019, 1:29 P.M.
         2                            * * * *
         3        THE CLERK:  Number 1, 18-CR-3739, United States of
         4   America vs Manuel Agustin Rodriguez-Serna, set for a sentence
01:29    5   with a presentence report.
         6        MS. HEESCH:  Meghan Heesch on behalf of the United
         7   States.
         8        THE COURT:  Good morning.
         9        MR. DONAU:  Good afternoon, Your Honor.  Skip Donau
01:30   10   appearing for Mr. Manuel Rodriguez-Serna, who is in custody.
        11        THE COURT:  Good afternoon.
        12        MR. DONAU:  While we're waiting, Your Honor, let me
        13   introduce John Brown, my investigator, who I asked to be in the
        14   courtroom.
01:31   15        THE COURT:  All right.  Thank you.
        16      (Defendant present.)
        17        THE COURT:  All right.  Counsel, your client is
        18   present; is that correct?
        19        MR. DONAU:  Yes, Your Honor.
01:31   20        THE COURT:  All right.  This is a continuation of the
        21   sentencing that we started on December 23rd of 2019.
        22        As I indicated on that date, I reviewed the
        23   presentence report, the defense objections to the presentence
        24   report, the addendum to the presentence report, the defense
01:31   25   sentencing summary chart, the defendant's social history, the
```

```
            1   government's amended sentencing memo, and the defendant's
            2   sentencing memo as well.
            3           Counsel, you've had an opportunity to review and
            4   discuss the presentence report with your client?
01:32       5           MR. DONAU:  We have discussed it with him, Your Honor.
            6           THE COURT:  All right.  And as I indicated, I am not
            7   inclined to impose the plus three pursuant to role recommended
            8   by probation pursuant to Section 3B1.1B, which I certainly
            9   understand why they have suggested it, but I am inclined to
01:32      10   follow the recommendations of both sides which has a guideline
           11   range of 168 to 210 months prior to any departures.
           12           May I see counsel at sidebar briefly.
           13      (Sidebar proceedings took place.)
           14           THE COURT:  All right.  Counsel, any comments you
01:35      15   would like to make with respect to the sentence that I should
           16   impose?  Anything else?  Anything else you like to say?  You
           17   can repeat the comments you made on the 23rd.  Anything you
           18   like to say, you are welcome to say now.
           19           MR. DONAU:  Thank you, Your Honor, and I don't mean to
01:35      20   be repetitive, but I think that the record conclusively
           21   demonstrates that for the vast majority of
           22   Mr. Rodriguez-Serna's life he was a law-abiding citizen who was
           23   well respected in the community and raised a doctor, a lawyer,
           24   and a civil engineer, which is unheard of and to be commended
01:35      25   in any culture in any place in the world, and he got that -- he
```

01:35

01:36

01:36

01:36

01:37

1   got involved in a business venture that went south.  That debt
2   occurred.  We established conclusively the debt, and rather
3   than welch on it or go into bankruptcy, he elected to take this
4   very poor decision to pay off the debt, which he did.
5           He started off as go-fer and ended up as carrier of
6   the football, which is a euphemism for a telephone.  He has no
7   prior record.  He has no drug problems.  He has a loving
8   family.
9           He is going to -- whatever sentence you impose, he is
10  going to probably be at 60-plus by the time he gets out, even
11  though he has for the vast majority of his life contributed to
12  society.
13          So I would ask you to take into consideration his life
14  work, take into consideration the good that he's done during
15  his life, take into consideration the super-acceptance of
16  responsibility and any other factors that the Court deems
17  appropriate under 3553.
18          THE COURT:  Thank you.
19          Any comments you would like to make, sir?
20          THE DEFENDANT:  Yes, sir.  Sir, as I said in the
21  letter, if you walk along the river, then you get your feet
22  dirty.  I thought the crime wouldn't catch up to me, but it
23  did.  I understand now that I did a lot of damage with this --
24  with this crime.
25          I accept responsibility for the crime that I

```
01:37

01:38

01:38

01:38

01:38
```

1  committed.  It destroys families and persons, and then I
2  destroyed my family right now.
3         The time that I will do in jail, I won't be able to
4  see my mother, who is 92 years old, and I cannot see my wife
5  here anymore.  They took away her passport and visa, my wife's.
6         I accept responsibility for the crimes.  I want to
7  apologize to the United States government for the crime that I
8  committed.  I also apologize to the United States government
9  for the crime that I committed and that I can help with their
10 investigations -- I cannot help with the investigations because
11 I would put my family in danger and mine as well.
12        And I am in your hands, sir, and also the United
13 States laws.  Thank you very much.
14        THE COURT:  Thank you, sir.
15        From the government.
16        MS. HEESCH:  Your Honor, the wiretap evidence in this
17 case has shown that this defendant's role was a broker of
18 cocaine transactions at the highest levels, hundreds of
19 kilograms of cocaine, and I would just refer the Court to
20 paragraphs two and three of the factual basis in the plea
21 agreement.
22        And one other factor, Your Honor, that other
23 defendants in this case have gotten the benefit of expeditious
24 resolution, usually another two level departure.  In this case
25 we had extensive wiretap litigation, so this defendant is not

```
01:39

01:39




01:39




01:40




01:40
```

1  accorded that benefit.  We're recommending a 180 months.  It is
2  the middle of the range.  I believe that is the lowest sentence
3  given this level of conduct to deter others and to not create
4  an unwarranted disparity.
5          THE COURT:  All right.  Thank you.
6          In this instance the defendant did plead guilty to
7  violations of Title 21, United States Code, Section 952, 960,
8  and 963.
9          As set forth in the plea agreement, beginning no later
10  than on or about 2014 and continuing until August 28th, 2018,
11  Defendant Rodriguez-Serna was a member of narcotics trafficking
12  organization based in Guadalajara, Mexico, which participated
13  in the transportation of cocaine from Guadalajara to Mexico and
14  coordinated with additional coconspirators who imported cocaine
15  from Columbia and Venezuela to Costa Rica and Guatemala by
16  aircraft and vessels.
17          Rodriguez admits that he was a trusted member of the
18  organization and was responsible for a number of aspects of the
19  organization's operations.  Specifically, Defendant Rodriguez
20  admits that he entered into an agreement with other members of
21  the organization to coordinate organizing the transportation
22  and distribution of large quantities of cocaine for importation
23  into Mexico.
24          Rodriguez admits that he and his coconspirators had
25  reason to believe that the tonnage quantities of cocaine was

```
01:40    1   destined for the United States.  For example, on October 8th,
         2   2017, Rodriguez participated in the coordination of a delivery
         3   of 419 kilograms of cocaine, a Schedule II controlled
         4   substance, from Venezuela to Guatemala via aircraft, which the
01:40    5   defendant's organization intended to import into Mexico.  The
         6   cocaine was seized in Guatemala following a plane crash.
         7           With respect to the Advisory Sentencing Guidelines,
         8   the Court finds that the base offense level based upon
         9   450 kilograms of cocaine or more starts at a 38.  There is a
01:41   10   plus two pursuant to Section 2D1.1B3, use of aircraft; a minus
        11   two for safety valve, pursuant to Section 2D1.1(b)(7) and
        12   Section 5C1.2.
        13           The adjusted offense level is 38.  There is a
        14   three-level reduction for acceptance of responsibility.  The
01:41   15   total offense level is 35.
        16           Mr. Rodriguez has no criminal history points which
        17   places him in Criminal History Category 1.  The guideline range
        18   is 168 to 210 months.
        19           The nature and circumstances of the offense are
01:41   20   aggravated based upon the nature of the substance, the amount
        21   of it, and the defendant's participation.  He doesn't in my
        22   view qualify for the role as a manager, and neither side
        23   suggests that he is entitled to a minor role.
        24           You know, his participation has been, by defense
01:41   25   counsel, analogized to the carrying of a football to carrying
```

|       |    |                                                                              |
|-------|----|------------------------------------------------------------------------------|
|       | 1  | the phone, and I find it is more than that, at least in the                  |
|       | 2  | plea agreement.  It is more than that -- at least the words in               |
|       | 3  | this plea agreement say.                                                     |
|       | 4  |     I find that he may have started out that he didn't   |
| 01:42 | 5  | think that he was going to be significantly involved, but                    |
|       | 6  | certainly based on the facts of the plea agreement which he                  |
|       | 7  | signed, I find it to be that he was involved, not to the extent              |
|       | 8  | that it is an aggravating role but certainly far from a minor                |
|       | 9  | role.                                                                        |
| 01:42 | 10 |     His history and characteristics, prior to this event |
|       | 11 | all positive.  He is approximately 53 years of age.  He was                  |
|       | 12 | involved in this offense probably for a few years.                           |
|       | 13 |     Is that the government's assessment maybe for two    |
|       | 14 | years or so, two or three?                                                   |
| 01:42 | 15 |     MS. HEESCH:  About four years, Your Honor.           |
|       | 16 |     THE COURT:  So maybe four, and we could quibble      |
|       | 17 | whether it is four or three, but it does appear that he was                  |
|       | 18 | probably 50 before he got involved in this, maybe 49.                        |
|       | 19 |     MR. DONAU:  49, 50.                                  |
| 01:42 | 20 |     THE COURT:  Before he became involved in this, and,  |
|       | 21 | you know, prior to that it is, you know, sort of, you know, a                |
|       | 22 | success story.  He had very humble means.  He was an                         |
|       | 23 | entrepreneur.  He started and ran with a number of successful                |
|       | 24 | businesses.  He was by anybody's estimation well thought of as               |
| 01:43 | 25 | a parent, spouse, father, all those things that society puts                 |

|  |  |  |
|---|---|---|
|  | 1 | great weight on.  He was very good at all of those things. |
|  | 2 | And then, you know, based on this debt that he had, he |
|  | 3 | got involved in this activity, and not unlike a lot of others |
|  | 4 | who get involved, they have some financial desperation.  For |
| 01:43 | 5 | some, they are much younger and they get involved in it based |
|  | 6 | on financial necessity, and some others, it is just their |
|  | 7 | profession.  They start fairly young.  That is what they do. |
|  | 8 | They are in the drug business, and they are in it for a long |
|  | 9 | period of time. |
| 01:43 | 10 | And your client he is not in that category.  He is |
|  | 11 | somebody who got into it relatively, you know, late in life |
|  | 12 | with a very established employment record that was, you know, |
|  | 13 | fairly distinguished, and so it is hard -- it is a little |
|  | 14 | unusual to see somebody whose led a crime-free life get |
| 01:44 | 15 | involved in something so late in life, you know, on such a |
|  | 16 | scale because it wasn't like, you know, he was asked to, you |
|  | 17 | know, give some forged checks or something, you know. |
|  | 18 | It was -- he used the same skills that he's had to run |
|  | 19 | his other successful business, he did this, and so I don't |
| 01:44 | 20 | doubt that he is very, you know -- that he regrets it and |
|  | 21 | wishes he could, you know, go back in history, and any time he |
|  | 22 | receives is not -- you know, it is difficult. |
|  | 23 | I think the older people get, you know, they |
|  | 24 | understand they don't have as much time as the people think |
| 01:44 | 25 | they have when they are much younger. |

```
 1            He has no juvenile adjudications, no adult criminal
 2   convictions.
 3            The need for the sentence to reflect the seriousness
 4   of the offense, promote respect for the law, and to provide
 5   just punishment.
 6            I am going to vary somewhat from the Advisory
 7   Sentencing Guidelines.  The bottom of the guideline range is
 8   168 months.  I am going to vary some, and it is really just
 9   based upon sort of a crime-free life and something that this
10   occurred very late in life.  That is really the primary basis
11   for it -- certainly, the only basis because I think his
12   involvement was, you know, fairly significant.
13            I am going to impose a sentence of 130 months.  It is
14   a 38-month departure from the bottom end of the guidelines.  I
15   recognize it is significantly less than what the government's
16   requesting but more than what the defense is requesting, but I
17   do think that it takes into account that.  He led a crime-free
18   life for an extended period of time, and this is out of
19   character for him, appears to be out of character for him.
20            And if he didn't have that, the sentence would be much
21   higher.  It would be closer to what the government asks, but it
22   is -- and he does get, you know, a fair amount of, you know,
23   benefit of the doubt that he lived a crime-free life for a long
24   period of time, and I am sure that he may have been tempted to
25   engage in other criminal activities and never succumbed until
```

1 late, and obviously that is the downside.

2 And, you know, from what his admitted facts were in
3 the plea agreement, you know, his involvement was, you know,
4 not insignificant, and as, you know, I am sure counsel is
5 aware, most of the people that come before the Court are people
6 at the bottom end of the, you know, the chain here, and they
7 are, you know -- every Monday there is a host of people that
8 are 18 and 19 years old; their judgment is horrible; and they
9 are driving a car from Mexico into the United States, and they
10 have the cocaine in it or they have meth in it.

11 And those guidelines are high too, very high. And
12 often they receive, you know, even with variances, two and
13 three and four, in some places they receive five and six years,
14 and they are at the absolute bottom.

15 And it is not that often -- I mean it happens, but it
16 is not that often that we see somebody that is -- that is
17 Mr. Rodriguez's role where most of the criminal acts occurred
18 in a foreign country and involved other foreign countries.
19 Often they are not here. They are never here. It is the
20 people at the bottom that are taking all the risk and get for
21 what they did fairly significant sentences.

22 So when we compare this gentleman with the people at
23 the very bottom, one could -- I think there could be a fair
24 argument that the gap in the sentences should be bigger, that
25 the people at the bottom, when you compare with what

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | Mr. Rodriguez is getting, Mr. Rodriguez's sentence should be         |
|       | 2  | higher.                                                              |
|       | 3  | But having considered all the factors and, you know,                 |
|       | 4  | the one that, you know, certainly counsel emphasized,                |
| 01:48 | 5  | understandably so, is that he led a crime-free life for a long       |
|       | 6  | time, and that counts for something.                                 |
|       | 7  | And I also understand it is not easy to do the time,                 |
|       | 8  | you know, at his age, and I think that his -- the likelihood of      |
|       | 9  | him re-offending is fairly small.  I think he understands -- he      |
| 01:48 | 10 | is genuine.  I think he understands he made a mistake.  He           |
|       | 11 | wishes he hadn't done it.                                            |
|       | 12 | For some, you sentence them for a drug crime in their                |
|       | 13 | 20s or 30s, and they come back and get right back into it, and       |
|       | 14 | I don't think that he will.  It is a fairly significant              |
| 01:48 | 15 | variance.  I am sure from the government's perspective it is a       |
|       | 16 | significant variance.  From the defense it is not significant        |
|       | 17 | enough.  I understand that.                                          |
|       | 18 | But I keep going back to the main -- the thing that I                |
|       | 19 | found to be most persuasive in reading all the sentencing            |
| 01:48 | 20 | materials was, you know, that he is somebody who had been            |
|       | 21 | successful and had been an entrepreneur and had done things          |
|       | 22 | legally and had been successful, raised a family and had been        |
|       | 23 | well thought of by many, many people, and I think this is out        |
|       | 24 | of character.                                                        |
| 01:49 | 25 | But I also agree -- well, the characterization I think               |

                1  in the plea agreement, which is the document that he signed
                2  under oath, I think that is the characterization of his
                3  involvement that I relied on, and that picture is somebody who
                4  was more than carrying a phone.  But I understand why the
    01:49       5  argument was made.
                6          I have considered all the 3553 factors and will impose
                7  a sentence of 130 months.  Therefore, pursuant to Sentencing
                8  Reform Act of 1984, it is the judgment of this Court that the
                9  defendant is committed to the custody of Bureau of Prisons to
    01:49      10  be imprisoned for a period of 130 months.
               11          Upon release from imprisonment, the defendant is
               12  placed on a five-year period of supervised release, subject to
               13  the standard conditions and in addition the following special
               14  condition:  If deported, excluded, or allowed to voluntarily
    01:49      15  return to his country of origin, he not re-enter the United
               16  States illegally, and report to the probation officer within
               17  24 hours of any re-entry into the United States.
               18          Supervision is waived upon deportation, exclusion, or
               19  voluntary departure.
    01:50      20          The Court does not impose a fine, finding the
               21  defendant does not have the financial ability to pay a fine.
               22          The Court does impose the required $100 mandatory
               23  special penalty assessment.
               24          Counsel, would you please come forward and obtain a
    01:50      25  copy of the terms of supervised release, and please provide a

```
 1   copy of those to your client.
 2           MR. DONAU:  Thank you.
 3           THE COURT:  I'll recommend that the defendant be
 4   designated to a facility in the western region as close to
 5   Southern California as possible.
 6           Is that your request?
 7           MR. DONAU:  That is my request, Your Honor.
 8           THE COURT:  All right.  As close to Southern
 9   California as possible.
10           And in light of the sentence, counsel, has your client
11   waived his right to appeal the sentence?
12           MR. DONAU:  He does, Your Honor.
13           THE COURT:  Anything further from the government?
14           MS. HEESCH:  Yes, Your Honor.  The Court signed a
15   preliminary forfeiture order.  Would you also include that in
16   the J and C and pronounce it orally?
17           THE COURT:  Yes.  I did sign the order of preliminary
18   forfeiture, and we will note that -- that we'll note that a
19   forfeiture order has been signed in the judgment.
20           Anything else?
21           MR. DONAU:  No, Your Honor.  May we be excused?
22           THE COURT:  Yes.  Thank you, counsel.
23           MS. HEESCH:  Thank you.
24       (Proceedings concluded at 1:50 p.m.)
25                            ---o0o---
```

C-E-R-T-I-F-I-C-A-T-I-O-N

I hereby certify that I am a duly appointed, qualified and acting official Court Reporter for the United States District Court; that the foregoing is a true and correct transcript of the proceedings had in the aforementioned cause; that said transcript is a true and correct transcription of my stenographic notes; and that the format used herein complies with the rules and requirements of the United States Judicial Conference.

DATED: January 17, 2020, at San Diego, California.

/s/ Melinda S. Setterman
_____
Melinda S. Setterman,
Registered Professional Reporter
Certified Realtime Reporter